IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

CECIL LARRY HOOPER,  6:16-CV-00037

    *Plaintiff,*

    v.  MEMORANDUM OPINION

BWXT GOVERNMENT GROUP, INC.,

    *Defendant.*  JUDGE NORMAN K. MOON

Plaintiff brought claims against Defendant for failure to hire under the Age Discrimination in Employment Act ("ADEA"). Defendant BWXT Government Group, Inc. ("BWXT") has filed a motion to dismiss, arguing that a valid severance agreement ("the Agreement") between the parties containing a reemployment waiver precludes Plaintiff's claims. Alternatively, Defendant argues in a motion to strike that any allegations of discriminatory conduct predating the agreement and any claim for compensatory damages should be stricken from the complaint.

Considering the text of the Agreement, this Court finds that Plaintiff did not waive his right to assert future failure to hire claims. The best interpretation of the relevant language is that Plaintiff agreed to waive reemployment claims stemming from his termination, but not the right to seek future employment nor any claims emanating from that right. Therefore, Defendant's motion to dismiss will be denied.

Defendant's motion to strike will be denied in part and granted in part. Defendant's request to strike language relating to discrimination prior to the Agreement will be denied

1

because such language is potentially relevant in several ways and not unduly prejudicial. Defendant's motion to strike language relating to compensatory damages under the ADEA will be granted, as such damages are unavailable.

## I. Facts as Alleged

Plaintiff was employed by the Babcock & Wilcox Company ("B&W") as a purchasing agent beginning in November of 2011. (Dkt. 1 at 3). BWXT is an affiliate of the B&W. (*Id.*). Much of Plaintiff's work involved a company named Generation mPower, LLC, which is structured as an affiliate between BWXT and Bechtel Power Company. (*Id.*). Beginning in April of 2014, Generation mPower began a series of Reductions in Force ("RIFs"). (*Id*. at 4). Sensing the "dismantling" of his group, Plaintiff began to apply to other similar positions at B&W soon after the RIFs began. (*Id*. at 4-5).

On December 8, 2014, as part of the third RIF, Plaintiff received and executed the Agreement, ending his employment at B&W. (*Id*. at 6). In exchange for consideration valued at approximately $10,000, Plaintiff agreed, in essence, to waive all claims against B&W, including any claims under the ADEA. (*See* dkt. 7-1). The parties do not contest that Plaintiff waived all claims that existed prior to the December 8th agreement. (*See* dkt. 1 at 6 n.2). The parties dispute, however, the effect of the Agreement on Plaintiff's subsequent failure to hire claims. The following two, potentially contradictory sentences in the Agreement form the basis of this controversy:

> I understand that I am also waiving any claim to reinstatement or reemployment by B&W. I also understand that this Release does not apply to any claim arising after the effective date of this Agreement . . . .

(Dkt. 7-1).

Two days after signing the Agreement, Plaintiff was contacted by B&W to perform work

2

on a contract basis, which he did for three months. (Dkt. 1 at 7). Additionally, Plaintiff continued to apply to positions at B&W, including applying to a position a mere nine days after signing the Agreement. (Dkt. 1-2). Plaintiff filed twenty applications in total after signing the Agreement, but was not hired to any position. (*Id.*).

Plaintiff filed suit against Defendant, asserting failure to hire claims under the ADEA. Defendant filed a motion to dismiss arguing that the language of the Agreement ("I am also waiving any claim to reinstatement or reemployment by B&W") precluded any failure to hire claims by Plaintiff.

## II. Standard of Review

### a. Motion to Dismiss for Failure to State a Claim

When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept as true all well-pleaded allegations. *See Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). Stated differently, in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

### b. Motion to Strike

The parties disagree over the correct standard of review for a motion to strike, so it is

3

worth discussing in some depth. Additionally, as one district court in the Fourth Circuit has noted: "[o]ur court of appeals has never had occasion to address the Rule 12(f) standard at length." *City Nat. Bank v. Clark*, No. CIV.A. 2:05-0675, 2006 WL 1455696, at *2 (S.D.W.Va. May 23, 2006).

Under Federal Rule of Civil Procedure 12(f), a court "may strike from the pleadings an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The purpose of the motion to strike is to avoid the waste of time and money that arises from litigating unnecessary issues." *Godfredson v. JBC Legal Group*, *P.C.,* 387 F. Supp. 2d 543, 547 (E.D.N.C. 2005) (internal quotation marks omitted). Motions to strike are "generally viewed with disfavor because striking a portion of a pleading is a drastic remedy." *Waste Management Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (internal quotation marks omitted). Even when "technically appropriate and well-founded," motions to strike are often "denied in absence of demonstrated prejudice to the moving party." *Clark v. Milam*, 152 F.R.D. 66, 70 (S.D.W.Va. 1993). Further, a court "possesses considerable discretion in disposing of a motion to strike redundant, impertinent, immaterial or scandalous matter." *Carlson v. Gen. Motors Corp.*, No. CIV. A. 2-86-2674-1, 1991 WL 90893, at *1 (D.S.C. Mar. 14, 1991) (citing 5A C. Wright and A. Miller, Federal Practice & Procedure: Civil § 1382, at 683 (2d ed.1990)). However, "motions to strike requests for certain types of relief, such as punitive damages, are generally granted if such relief is not recoverable under the applicable law." *Jackson v. United States*, No. CV 3:14-15086, 2015 WL 5174238, at *1 (S.D.W.Va. Sept. 2, 2015) (citing Moore's Fed. Practice 3D § 12.37[3], at 12–130 (3d ed. 2009)).

Defendant cites *Palmer v. Oakland Farms, Inc.*, No. 5:10CV00029, 2010 WL 2605179, at *2 (W.D.Va. June 24, 2010) for its litany of grounds on which a court might grant a motion to

strike.[1] However, Defendant fails to note that the grounds are explicitly those on which an *affirmative defense* can be struck from the pleadings. Although Rule 12(f) does not differentiate between the defenses and other claims, some of the rationales behind the rule, such as avoiding litigation of side issues, might apply more strongly in the context of an affirmative defense. Further, the Fourth Circuit case law does not indicate that *Palmer's* standard has been widely adopted.

### III. Discussion

#### a. Motion to Dismiss

The basis of the controversy for this motion to dismiss is the meaning of the following two sentences:

> I understand that I am also waiving any claim to reinstatement or reemployment by B&W. I also understand that this Release does not apply to any claim arising after the effective date of this Agreement . . . .

Plaintiff asserts one construction of these sentences that would permit his claim, while Defendant puts forth a different one that would bar it. Under Plaintiff's interpretation, the first sentence bars claims to reinstatement or reemployment stemming from his termination, while the second sentence acts to preserve claims that may arise after termination, such as his present failure to hire claims based on applications sent after the Agreement was executed. Defendant, on the other hand, claims that the first sentence bars any claim predicated on a right to reemployment (such as Plaintiff's failure to hire claim), while the second sentence operates to permit any other claim arising after the Agreement that do not involve reemployment or other rights waived.

As an initial matter, this Court rejects Defendant's contention that it is somehow barred from

---

[1] They include: "insufficient as a matter of law; if they potentially serve only to cause delay; if they have no possible relation to the controversy; if they would require 'unnecessary time and money . . . litigating invalid, spurious issues'; or if they fail to meet the pleading requirements of Rules 8 and 9."

5

interpreting the Agreement by virtue of the Supreme Court's decision in *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422 (1998). While it is true that *Oubre* stated that "[t]he OWBPA sets up its own regime for assessing the effect of ADEA waivers, separate and apart from contract law," it did so in the context of deciding that the principle of ratification did not apply to ADEA waivers. *See Oubre*, 522 U.S. at 427. Application of the principle of ratification would have vitiated the purpose of OWBPA by validating waivers that failed to comply with the statute. *See id.* Nothing in the holding suggested that a court may not make logical conclusions based on the text of an ADEA waiver to determine its meaning.

Further, even if *Oubre* were construed broadly to forbid the application of any contract law principles, this Court need not employ explicitly contractual doctrines such as *contra proferentum* to resolve this dispute. A court must interpret the relevant provisions of any agreement to determine their meaning in the context of a dispute. Without giving some meaning to the words of an agreement, the Court fails to see how it could resolve this, or any, ADEA matter. Defendant itself clearly asks the Court to interpret the Agreement by asking the Court to construe provisions of the Agreement as barring Plaintiff's failure to hire claims. Defendant cannot claim, then, that this Court is somehow barred by *Oubre* from interpreting the language of the Agreement. Thus, this Court will interpret the Agreement to determine whether it has the meaning necessary to support Defendant's motion.

In interpreting the Agreement, the Court finds that Plaintiff has put forth the correct reading. In a document that (1) terminates employment, (2) waives reemployment claims, and (3) preserves the right to bring future claims, the most natural interpretation of the type of reemployment claim waived is one that both stems from termination and does not arise after the Agreement. Further, there are types of claims that exist that would fit precisely within Plaintiff's interpretation of the provisions.

For example, reemployment claims that stem from termination are common, as courts can

and do order reinstatement as an equitable remedy in the event of a wrongful termination. *See Chadwell v. Brewer*, 59 F. Supp. 3d 756, 761 (W.D. Va. 2014) ("Reinstatement is generally recognized to be an appropriate remedy for wrongful termination."); *Martin v. Senn Dunn Marsh & Roland LLC*, No. 1:05CV00063, 2006 WL 3327680, at *2 (M.D.N.C. Nov. 14, 2006) (bringing a "Claim for Wrongful Termination or Failure to Reinstate motivated by Age Discrimination and Retaliation"); *Reed v. Dep't of Corr., Va.*, No. 7:13-CV-00543, 2014 WL 5810463, at *2 (W.D. Va. Nov. 7, 2014) (noting in a Title VII wrongful termination case that frontpay could be sought "in lieu of reinstatement"). Additionally, employees are sometimes immediately reemployed in another capacity following their termination, as occurred in this case when Plaintiff was employed on a contract basis two days after his termination. Had Plaintiff, for example, asserted a right to contract work as a condition of his termination, the language of the Agreement would have barred his suit. Thus, a perfectly reasonable and harmonious meaning may be given to both the first and second sentence in question by interpreting the first as barring reemployment claims stemming from termination and the second as permitting claims that arise after termination.

     Defendant's interpretation, on the other hand, creates an unnecessary conflict by claiming that reemployment rights waived include those that may arise after the execution of the Agreement. Given the availability of reemployment claims that arise from termination and do not have any connection to actions taken after a waiver is signed, the Court sees no reason to stray from the most natural and compatible interpretation of the language and adopt Defendant's broader and potentially conflicting interpretation. Thus, the language of the Agreement does not support Defendant's claim that Plaintiff waived any failure to hire claims.

     Even if the Court's reading of the provisions is not the unavoidable and necessary interpretation of the text, the language is at very least ambiguous. As described above, a reasonable interpretation of the Agreement exists that runs counter to the interpretation put forth by Defendant. Under the OWBPA, a waiver must be "knowing and voluntary." A waiver is not knowing and

7

Case 6:16-cv-00037-NKM-RSB   Document 26   Filed 11/03/16   Page 7 of 12   Pageid#: 201

voluntary unless it is "written in a manner calculated to be understood by such individual, or by the average individual eligible to participate." 29 U.S.C. § 626(f)(1)(A). Plaintiff could not have knowingly and voluntarily waived his right to assert a failure to hire claim when the provision purporting to waive his right is susceptible to a reasonable interpretation under which that right was not waived. If the provision is ambiguous, the OWBPA prevents its enforcement against an unknowing former employee. *See Thomforde v. Int'l Bus. Machines Corp.*, 406 F.3d 500, 503 (8th Cir. 2005) (holding that ambiguous and potentially conflicting provisions in an ADEA waiver were unenforceable against a former employee).

Defendant can only succeed in its motion to dismiss if the Agreement clearly and unambiguously barred Plaintiff's claims. As described in the preceding paragraphs, the Agreement does not have that meaning. Therefore, Plaintiff cannot be prevented from asserting his failure to hire claims by an Agreement under which he did not clearly waive his right to do so.

In addition, Defendant's policy arguments are unavailing. This Court is not holding, as Defendant contends, that the OWBPA prevents employers from ever permanently ending an employment relationship by preventing reemployment. This Court is stating, however, that an employer wishing to permanently end an employment relationship must include language in their severance agreement clearly purporting to do so. Such language might include an explanation of how two potentially conflicting provisions coexist, or an explicit agreement by the employee to never *seek* reemployment in the future.

Defendant's claim that Plaintiff is unfairly retaining the benefit of the bargain is similarly unpersuasive. Defendant did obtain something of value for its consideration – the waiver of any claims of age discrimination claims prior to or relating to Plaintiff's termination. Had Defendant
8

also wished to obtain the benefit of Plaintiff never being able to assert a failure to hire claim stemming from subsequent conduct, it should have paid him to sign an agreement in which he agreed not to seek reemployment with Defendant. Defendant did not do that, however, and instead obtained only the rights it actually bargained for in the Agreement.

### b. Motion to Strike

#### i. Allegations Prior to December 8th Severance Agreement

Defendant seeks to strike all language in the complaint that accuses it of discriminatory acts prior to the December 8th settlement agreement. It argues that such accusations are irrelevant because the Plaintiff admits he waived any claims prior to that date. Plaintiff, however, argues that the facts alleged prior to the settlement agreement are relevant background information that help establish that he was an otherwise exemplary employee who was being treated poorly solely because of his age.

Given the high standard for granting a motion to strike and the potential relevance of Plaintiff's allegations, Defendant's motion to strike this language will be denied. Plaintiff's language is potentially relevant in two ways. First, as Plaintiff asserts, it provides relevant context to the decision not to rehire him. The alleged facts that Plaintiff had not faced prior disciplinary actions and had been treated unfairly because of his age are relevant to the dispositive issue of Defendant's motivation in not rehiring Plaintiff. The mere fact that certain assertions in a complaint do not give rise to liability does not mean that they are irrelevant, nor does it require this Court to strike them.

Second, the fact that Plaintiff alleges pre-release discrimination in his complaint is relevant to whether a court may consider his failure to hire claims as merely "continuations" of previously waived wrongful termination claims. *See Kellogg Co. v. Sabhlok*, 471 F.3d 629, 632

9

(6th Cir. 2006); *Adams v. Philip Morris, Inc.*, 67 F.3d 580, 584 (6th Cir. 1995) ("[W]e have recognized that when a settlement agreement incorporates the future effects of prior discrimination, it effectively bars new discrimination claims based on post-settlement conduct that stems directly from, or is a continuing effect of, past discrimination."); *Hamilton v. Gen. Elec. Co.*, No. 3:06-CV-659-R, 2007 WL 4218945, at *4 (W.D. Ky. Nov. 29, 2007), *rev'd on other grounds*, 556 F.3d 428 (6th Cir. 2009) ("One exception to this general rule is that a waiver may be effective to preclude claims involving a 'continuing effect' of past discrimination."); *Blakeney v. Lomas Info. Sys., Inc.*, 65 F.3d 482, 483 (5th Cir. 1995) ("The employees' cause of action for failure to rehire is simply an attempt to revive claims they were paid to release."); *Burnam v. Amoco Container Co.*, 755 F.2d 893, 894–95 (11th Cir. 1985) ("However, a failure to rehire subsequent to an allegedly discriminatory firing, absent a new and discrete act of discrimination in the refusal to rehire itself, cannot resurrect the old discriminatory act.").

Under this continuation theory, the fact that the complaint indiscriminately alleges conduct prior to and after the waiver makes it more likely that the Plaintiff is merely seeking to reassert a wrongful termination claim that he knowingly waived. The sections that Defendant seeks to strike would actually support Defendant's case under this theory by evidencing that Plaintiff is merely seeking to reassert pre-waiver claims.

Because the language to be stricken is potentially relevant, the court will not grant Defendant's motion to strike Plaintiff's pre-waiver allegations.

### ii. Compensatory Damages

The other language Defendant seeks to strike is Plaintiff's plea for "compensatory damages" related to "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary loss." (Dkt. 1 at ¶¶ 54, 50). Defendant asserts that

such damages are not available under the ADEA and that Plaintiff's sole claim for relief is a failure to hire claim under the ADEA.

Defendant correctly describes the law on this point. The Supreme Court has stated, noting extensive support from the circuits, that "the ADEA does not permit a separate recovery of compensatory damages for pain and suffering or emotional distress." *C.I.R. v. Schleier*, 515 U.S. 323, 326 (1995). Instead, available remedies for violations of the ADEA include: backpay, frontpay, reinstatement, injunctive relief, declaratory judgment, attorney's fees, and – in the case of a willful violation of the ADEA – liquidated damages equal to the backpay amount. *See McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 357–58 (1995).

Even under the high standard for a motion to strike, Defendant's motion will be granted with respect to compensatory damages. Other courts have acknowledged that striking relief that is not recoverable under the applicable law is a permissible use of Rule 12(f). *See Jackson v. United States*, No. CV 3:14-15086, 2015 WL 5174238, at *1 (S.D.W. Va. Sept. 2, 2015). Here, the law is unequivocal that compensatory damages for pain and suffering or emotional damages are not available under the ADEA. Granting the motion to strike here would have no adverse impact on the current litigation, but would prevent later prejudice and waste of time should Plaintiff try to erroneously seek unavailable compensatory damages.

Therefore, this Court will strike the following language from paragraph 50 of the complaint: "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life." Additionally, the Court will strike the word "compensatory" from paragraph 54.

## IV. Conclusion

Defendant's motion to dismiss for failure to state a claim will be **DENIED**. The language in the Agreement on which Defendant relies does not serve to bar Plaintiff's failure to hire

11

claims.

Defendant's motion to strike will be **DENIED IN PART** and **GRANTED IN PART**. The motion to strike Plaintiff's allegations of discriminatory conduct prior to the signing of the Agreement will be **DENIED**. Such allegations are relevant as background information and for use in classifying Plaintiff's claims. Defendant's motion to strike Plaintiff's claims for compensatory damages will be **GRANTED**.

Entered this 3rd day of November, 2016.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE